IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Samual Earl Ramu,

Plaintiff,

vs.

Major Jeff Johnson, Director of Florence County Detention Center,

Defendant.

C/A No.: 1:21-197-BHH-SVH

REPORT AND RECOMMENDATION AND ORDER

In this case, a pretrial detainee complains about the water provided at the detention center, seeking to recover damages for medical issues he alleges he developed due to the water supply, including a staph infection and acid reflux disease.

Samual Earl Ramu ("Plaintiff") filed this complaint for alleged violations of his civil rights against Major Jeff Johnson ("Defendant"), Director of Florence County Detention Center ("FCDC"). More specifically, Plaintiff brings suit pursuant to 42 U.S.C. § 1983 regarding the allegedly contaminated drinking water provided at FCDC, as well as unsanitary conditions in the showers due to the water supply.

This case is before the court on Defendant's motion for summary judgment. [ECF No. 55]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the

possible consequences if he failed to respond adequately to Defendant's motion. [ECF No. 59]. Having been fully briefed [ECF Nos. 61, 64, *see also* ECF Nos. 67, 68, 69, 71], the motion is ripe for disposition. Also before the court are Plaintiff's motions to appoint counsel, to strike, and for a more definitive statements/answers to interrogatories. [ECF Nos. 52, 53, 54].

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), the case has been referred to the undersigned for all pretrial proceedings. Having carefully considered the record, the undersigned denies Plaintiff's motions and recommends the district judge grant Defendant's motion for summary judgment.

I. Factual Background

At all times relevant, Plaintiff was a pretrial detainee, detained at FCDC. Johnson is a former employee of the Florence County Sheriff's Office who served as Director of FCDC.

Plaintiff alleges problems exist with the water quality at FCDC that led to him to develop a staph infection and acid reflux disease. [*See* ECF No. 1]. In support of his claims, Plaintiff has provided the court with declarations from other inmates housed at FCDC during the relevant time period, complaining of allegedly related issues. [*See* ECF No. 1-1 (inmate complaining of stomach and nail fungus on October 10, 2020); ECF No. 15 (inmate complaining about blue-green stains from water in sinks on February

17, 2021); ECF No. 16 (inmate complaining about blue-green water from sinks and that he complained to United States Marshal Stewart Cottingham who responded "this isn't right"); ECF No. 30-1 (inmate declaring he saw "the algae in the shower and the algae eating bug on the walls and can attest to the soap scum that is caked on the walls and I also can state that the water has been coming out blue-greenish out of the sink that we are forced to drink in our rooms and I can also say I've developed acid reflux disease . . . ."); ECF No. 42 (inmate complaining about mold on the walls and floor, blue/green stains in the sink, and foul smelling, funny tasting water)].

Plaintiff has also submitted medical records indicating that when he entered the FCDC, he did not have a bacterial ear infection or acid reflux, but, roughly a year later, in late 2020, he did. [ECF No. 47-1 at 13–27, ECF No. 61-2]. Plaintiff has also submitted the complaints he filed while at FCDC in which he complained of corrosion in the pipes causing the water to be green and causing medical concerns. [*See, e.g.*, ECF No. 47-1 at 7 (providing the following response to Plaintiff's complaints ("[o]ur [water] is provided by the City of Florence, it has been tested several times and found to be safe and clean. If you have medical issues please direct them to the Medical Department.")]. Finally, Plaintiff has provided what purports to be an analysis conducted on the water at FCDC in February 2021 identifying copper, lead, and PH levels found, although no analysis is provided

concerning the significance of any findings. *See id.* at 1–4.[1]

Defendant attests the water is supplied by the City of Florence and is the same water that is consumed by employees and other detainees at FCDC. [ECF No. 55-2 ¶ 3]. Defendant further attests that there have been no outbreaks of illness from either employees or detainees on account of the water. *Id.* ¶ 4.

II. Discussion

A. Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

[1] With his complaint, Plaintiff also submitted a plastic bag that appeared to have mold in it. [*See* ECF No. 1-3]. However, as the court advised Plaintiff, the Clerk of Court's office does not accept or forward to the judge non-documentary evidence. [*See* ECF No. 25].

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B. Analysis

1. Eleventh Amendment Immunity

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983. [ECF No. 1 at 4]. A civil action brought pursuant to 42 U.S.C. § 1983 provides a means to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States, but the statute is not, itself, a source of substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "Section 1983 imposes liability on any person who, under the color of state law, deprives another person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Doe v. Kidd*, 501 F.3d 348, 355 (4th Cir. 2007) (citing 42 U.S.C. § 1983). "Under 42 U.S.C. § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).

The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The United States Supreme Court has long held the Eleventh Amendment also precludes suits against a state by one of its own citizens.

*See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

A plaintiff "is not entitled to monetary damages under § 1983 against Defendants in their official capacities." *Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014) (citing *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (holding that Eleventh Amendment bars suits against non-consenting state, its agencies, and its officers acting in their official capacities)). However, suits for damages against state officials sued in their individual capacity are not barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.") (citation omitted).

To the extent Plaintiff sues Defendant in his official capacity, Defendant is not subject to suit under § 1983, and the undersigned recommends the district judge grant Defendant's motion for summary judgment regarding claims brought against him in his official capacity.

2. Conditions of Confinement

Actions brought pursuant to 42 U.S.C. § 1983 by pretrial detainees are evaluated under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520,

535, 537 n. 16 (1979); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Plaintiff's rights under the Fourteenth Amendment are at least as great as Eighth Amendment protections available to prisoners. *Martin*, 849 F.2d at 870.

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury).

Additionally, under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.*

Plaintiff has submitted evidence that water provided at FCDC was blue green at times and had an odd smell or taste and that he and other inmates have suffered from various medical ailments. However, Plaintiff has failed to

submit any evidence that the water at issue was connected to the reported medical concerns. [*See* ECF No. 61 at 1–2].

The Supreme Court has long held that prison officials must ensure that inmates receive adequate food and water. *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). More specifically, it has been long established that prison officials may not knowingly subject prisoners to polluted, unhealthy water that presents a serious risk to their health. *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."); *see also Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) ("Food that is spoiled and water that is foul would be inadequate to maintain health.").

Here, however, there is no indication the water at issue was a serious risk to the detainees' health, or that prison officials, including Defendant, knowingly subjected detainees to unhealthy water. Although Plaintiff has presented evidence that he complained to prison officials about the water, there is no indication in the record that Defendant was aware of any serious problems with the water and was deliberately indifferent to those problems. *See, e.g., Lopez v. Robinson*, 914 F.2d 486, 491–92 (4th Cir. 1990) ("The inmates' eighth amendment claim based on this incident challenges the harshness of the conditions during the 12 to 24 hours in which they were

locked down without running water in their cells . . . . Most obviously, the plaintiffs present no evidence of deliberate indifference on the part of Warden Green."). Instead, as attested by Defendant, the water was consumed "by staff, officers, detainees, and inmates at FCDC," with no known "outbreaks of illness of any staff, detainees, or inmates that have been traced back to the water provided at the FCDC." [ECF No. 55-2 ¶¶ 3–4].[2]

Additionally, "Plaintiff's own unsubstantiated opinions as a layperson regarding the existence of the medical issues he claimed to have suffered from and their causal relation to his cell conditions are insufficient to prevent summary judgment." *Rouse v. Johnson*, C/A No. 8:20-02845-DCC-JDA, 2021 WL 1821982, at *5 (D.S.C. Mar. 12, 2021) (collecting cases), report and recommendation adopted, C/A No. 8:20-02845-DCC, 2021 WL 1711689

[2] Plaintiff's argument, provided without supporting evidence, that "[i]t wasn't until the new Major Michael Brown came to be over the jail [that] the problem was fixed where he did come around personally and scrub and clean and fix the issue" [ECF No. 61 at 2], indicates the problem at issue was not that the water was unhealthy to drink, but the state of cleanliness. However, Plaintiff has provided no evidence that the alleged uncleanliness was a substantial risk to his health, that Defendant knew and disregarded this risk, or that he suffered any injury from this issue. *See, e.g., Randolph v. Dozier*, C/A No. 1:16-2953-TMC-SVH, 2017 WL 9289426, at *4 (D.S.C. Sept. 8, 2017) (recommending grant of summary judgment where plaintiff provided no evidence that defendants knew and disregarded a substantial risk of serious injury to him regarding the mold found in the detention center and where plaintiff failed to show any injury from the mold), report and recommendation adopted, C/A No. 1:16-02953-TMC-SVH, 2018 WL 618480 (D.S.C. Jan. 30, 2018).

(D.S.C. Apr. 30, 2021).[3]

Further, Plaintiff's claims should also be dismissed because he has failed to produce evidence of a serious or significant physical or emotional injury that resulted from allegedly drinking the water provided or using the shower. Although his medical records confirm his allegations that he developed an ear infection and acid reflux, there is no indication these conditions are related to the water. *See, e.g., Hill v. Wiggins*, C/A No. 6:11-3406-CMC, 2012 WL 4791125, at *4 (D.S.C. Sept. 17, 2012) ("While he complains of mold and contaminated water, he brings forth no evidence that he suffered any ill effects from it."), report and recommendation adopted, C/A No. 6:11-3406-CMC-KFM, 2012 WL 4791039 (D.S.C. Oct. 9, 2012); *Smalls v. Byars*, C/A No. 0:12-1189-RBH-PJG, 2012 WL 3230540, at *3 (D.S.C. July 13, 2012) ("Plaintiff has not alleged that he suffered a serious or significant physical or mental injury or demonstrated a substantial risk of such serious

---

[3] Although Plaintiff cites to the Ninth Circuit case *Keenan*, mentioned above, and additional out-of-circuit cases, these cases are distinguishable from the instant case. *See, e.g., Inmates of Occoquan v. Barry*, 717 F. Supp. 854, 866 (D.D.C. 1989) ("No human being should be required to frequent bathrooms with slime oozing down the walls, stalactites hanging from the ceiling, thick soap scum on the walls and floors, and sewer water dripping into toilets."). Additionally, although Plaintiff appears to argue otherwise, these out-of-circuit cases do not put Defendant on notice as to Plaintiff's clearly-established rights for purposes of a qualified immunity analysis. *See, e.g., Barker v. Gaylor*, C/A No. 2:20-00357, 2021 WL 3354161, at *8 (S.D.W. Va. Aug. 2, 2021) ("Moreover, an out-of-circuit district court case, on its own, would not ordinarily place an officer on notice as to a right for purposes of

harm as a result of the cell conditions of which he complains," including "rusty water"), report and recommendation adopted, C/A No. 0:12-01189-RBH, 2012 WL 3230497 (D.S.C. Aug. 6, 2012).

Defendant is entitled to qualified immunity because Plaintiff has failed to demonstrate that Defendant violated his constitutional rights. Accordingly, the undersigned recommends the district judge grant Defendant's motion for summary judgment as to Plaintiff's claims for violation of his constitutional rights due to the conditions of his confinement.

3. Supervisory Liability

To the extent Plaintiff sues Defendant in his individual capacity as supervisor, he has failed to state a claim under § 1983.

The doctrine of supervisory liability is generally inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom that results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). The Supreme Court explains that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Slakan v. Porter*,

---

qualified immunity.").

737 F.2d 368, 372–74 (4th Cir. 1984) (finding officials may be held liable for the acts of their subordinates, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization).

Plaintiff has failed to submit any evidence that Defendant was aware of or deliberately indifferent to any risk of injury to Plaintiff. Nor has Plaintiff demonstrated any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse").

For the reasons stated above, and because Defendant has submitted uncontroverted evidence that when he served as the administrator of the FCDC, he "was not in charge of the water or water quality used by the FCDC," and, instead, the water was "provided by the City of Florence" and consumed "by staff, officers, detainees, and inmates at FCDC," with no known "outbreaks of illness of any staff, detainees, or inmates that have been traced back to the water provided at the FCDC" [ECF No. 55-2 ¶¶ 3–4], the undersigned recommends granting Defendant's motion for summary judgment on Plaintiff's claims against him in his individual capacity based on supervisory liability. In sum, the undersigned recommends granting

Defendant's motion for summary judgment as to Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983.[4]

4. Plaintiff's Motions

Plaintiff additionally brings motions to appoint counsel, to strike, and for a more definite statement/certain answers to interrogatories.

Plaintiff has repeatedly argued he is entitled to legal representation in this matter. [*See, e.g.*, ECF No. 12]. There is no right to appointed counsel in § 1983 cases. *Cf. Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975). While the court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action, 28 U.S.C. § 1915(e)(1); *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971), such appointment "should be allowed only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Plaintiff has not shown any exceptional circumstances exist in this case. After a review of the file, the court has determined there are no exceptional or unusual circumstances presented that would justify the appointment of counsel, nor would Plaintiff be denied due process if an attorney were not appointed. *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984).

---

[4] Given the recommendation above and to the extent Plaintiff brings any claims based on state law [*see, e.g.*, ECF No. 1 at 4 (Plaintiff alleging Defendant violated his Fourteenth Amendment rights and was negligent)], the undersigned recommends the court decline to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c). Given this recommendation, it is unnecessary to address Defendant's argument that he

Turning to the motion to strike, Plaintiff does not indicate the document he specifically seeks to strike, instead arguing generally that he is entitled to relief. The undersigned denies Plaintiff's motion to strike.

Finally, Plaintiff argues Defendant has been evasive in answering his interrogatories and that Defendant's motion for summary judgment is premature in that Defendant has failed to fully respond to Plaintiff's interrogatories. [*See* ECF No. 54, ECF No. 61 at 1]. However, a review of the interrogatories at issue does not support Plaintiff's position. Theses interrogatories are, as argued by Defendant, "vague, confusing," and contain "undefined terms." [*See, e.g.*, ECF No. 54-1 at 3 ("Did you personally know about the issues that arose at your facility?" "But you did make sure your officers knew that you were [their] boss and that any issues were need to be directed to you for further investigation?" "Did you make any investigations after you were notified through your officers about any issues that were brought to your attention?")]. Therefore, the undersigned denies Plaintiff's motion.

III. Conclusion

For the foregoing reasons, the undersigned denies Plaintiff's motions to appoint counsel, to strike, and for a more definitive statements/answers to interrogatories [ECF Nos. 52, 53, 54] and recommends the district judge

---

is immune under the South Carolina Tort Claims Act. [ECF No. 55-1 at 8].

grant Defendant's motion for summary judgment. [ECF No. 55].[5]

IT IS SO ORDERED AND RECOMMENDED.

October 14, 2021
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

[5] The undersigned declines Defendant's invitation to recommend a strike be entered against Plaintiff pursuant to the Prison Litigation Reform Act.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).